**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ------------------------------------------------------- : | |
| RYAN O'DELL, : | |
| : | |
| Plaintiff, : | Civil Action No. 22-cv-6825 |
| : | |
| v. : | **COMPLAINT FOR VIOLATIONS OF** |
| : | **SECTIONS 14(a) AND 20(a) OF THE** |
| 1LIFE HEALTHCARE, INC., AMIR DAN : | **SECURITIES EXCHANGE ACT OF** |
| RUBIN, PAUL R. AUVIL, MARK S. : | **1934** |
| BLUMENKRANZ, M.D., BRUCE W. : | |
| DUNLEVIE, KALEN F. HOLMES, PH.D., : | **JURY TRIAL DEMANDED** |
| DAVID P. KENNEDY, FREDA LEWIS- : | |
| HALL, M.D., ROBERT R. SCHMIDT, : | |
| SCOTT C. TAYLOR, and MARY ANN : | |
| TOCIO, : | |
| : | |
| Defendants. : | |
| ------------------------------------------------------- : | |

Ryan O'Dell ("Plaintiff"), by and through his attorneys, alleges the following upon

information and belief, including investigation of counsel and review of publicly-available

information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal

knowledge:

1.      This is an action brought by Plaintiff against 1Life Healthcare, Inc. ("1Life or the

"Company") and the members 1Life's board of directors (the "Board" or the "Individual

Defendants" and collectively with the Company, the "Defendants") for their violations of Sections

14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a),

78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9 and 17 C.F.R. § 244.100, in connection with the

proposed acquisition of 1Life by affiliates of Amazon.com, Inc. ("Amazon").

2.      Defendants have violated the above-referenced sections of the Exchange Act by

causing a materially incomplete and misleading Preliminary Proxy Statement on Schedule 14A

(the "Proxy Statement") to be filed on August 10, 2022 with the United States Securities and Exchange Commission ("SEC") and disseminated to Company stockholders.   The Proxy Statement recommends that Company stockholders vote in favor of a proposed transaction whereby the Negroni Merger Sub, Inc. ("Merger Sub"), a wholly-owned subsidiary of Amazon, will merge with and into 1Life with 1Life surviving as an indirect wholly-owned subsidiary of Amazon (the "Proposed Transaction"). Pursuant to the terms of the definitive agreement and plan of merger the companies entered into on July 20, 2022 (the "Merger Agreement"), each 1Life stockholder will receive $18.00 in cash (the "Merger Consideration") for each 1Life share owned.

3.      As discussed below, Defendants have asked 1Life's stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Proxy Statement, in violation of Sections 14(a) and 20(a) of the Exchange Act.  Specifically, the Proxy Statement contains materially incomplete and misleading information concerning the analyses performed by the Company's financial advisor, Morgan Stanley & Co. LLC ("Morgan Stanley") in support of its fairness opinion.

4.      It is imperative that the material information that has been omitted from the Proxy Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

5.      For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to 1Life's stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6.     This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

7.     Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

8.     Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because Plaintiff resides in this District.

## PARTIES

9.     Plaintiff is, and has been at all relevant times, the owner of 1Life stock and has held such stocks since prior to the wrongs complained of herein.

10.    Individual Defendant Amir Dan Rubin has served as a member of the Board since August 2017 and is the Chairman of the Board and the Company's President and Chief Executive Officer.

11.    Individual Defendant Paul R. Auvil has served as a member of the Board since September 2019.

12.    Individual Defendant Mark S. Blumenkranz, M.D. has served as a member of the Board since November 2019.

13.    Individual Defendant Bruce W. Dunlevie has served as a member of the Board since June 2007.

14.     Individual Defendant Kalen F. Holmes, Ph.D. has served as a member of the Board since January 2017.

15.     Individual Defendant David P. Kennedy has served as a member of the Board since June 2007.

16.     Individual Defendant Freda Lewis-Hall, M.D. has served as a member of the Board since November 2019.

17.     Individual Defendant Robert R. Schmidt has served as a member of the Board since August 2018.

18.     Individual Defendant Scott C. Taylor has served as a member of the Board since June 2021.

19.     Individual Defendant Mary Ann Tocio has served as a member of the Board since September 2021.

20.     Defendant 1Life is a Delaware corporation and maintains its principal offices at One Embarcadero Center, Suite 1900, San Francisco, CA 94111.  The Company's stock trades on the NASDAQ Global Select under the symbol "ONEM."

21.     The defendants identified in paragraphs 10-19 are collectively referred to as the "Individual Defendants" or the "Board."

22.     The defendants identified in paragraphs 10-20 are collectively referred to as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### A.     <u>The Proposed Transaction</u>

23.     1Life operates a membership-based primary care platform under the One Medical brand. The Company has developed a healthcare membership model based on direct consumer enrollment, as well as third-party sponsorship. Its membership model includes seamless access to

24/7 digital health services paired with inviting in-office care routinely covered under health insurance programs. The company also offers administrative and managerial services pursuant to contracts with physician-owned professional corporations or One Medical Entities. As of December 31, 2021, it had 703,000 consumer and enterprise members, and 33,000 At-Risk members; 182 medical offices in 25 markets; and 8,500 enterprise clients in the United States. The company was incorporated in 2002 and is headquartered in San Francisco, California.

24.     On July 21, 2022, the Company announced the Proposed Transaction:

SAN FRANCISCO, June 07, 2021 (GLOBE NEWSWIRE) -- 1Life Healthcare, Inc. (One Medical) (Nasdaq: ONEM), a leading human-centered and technology-powered primary care organization, today announced it has entered into a definitive agreement to acquire Iora Health, a human-centric, value-based primary care group with built-for-purpose technology focused on serving Medicare populations, in an all-stock transaction valued at approximately $2.1 billion.

"We are delighted to announce plans to combine with Iora Health, a technology-powered primary care leader delivering outstanding member-based, value-based care for adults 65+ enrolled in Medicare Advantage and other at-risk reimbursement models. Together we will expand our addressable market to serve more members in more geographies with digital and in-person care across every stage of life, with further capabilities to deliver care within full-risk models. Together with Iora Health, we can deliver better health, better care, and lower costs for children, adults, and seniors," said **Amir Dan Rubin**, Chair & CEO of One Medical.

"Chris McKown and I founded Iora Health over 10 years ago to build an innovative primary care model that transforms lives and improves outcomes through relationship-based care, and we are excited to take this next exciting step with One Medical," said **Rushika Fernandopulle**, M.D., MPP, Co-Founder and Chief Executive Officer of Iora Health. "Together, with our aligned cultures, shared mission, and complementary models, we can drive even greater impact for our patients, our teams, and our investors, and most importantly, our shared vision of transforming healthcare."

One Medical and Iora Health are aligned in their missions, models, and cultures to transform healthcare for key stakeholders -- Consumers, Employers and Payers, Providers, and Health

Networks. Together, the two companies can further accelerate and build upon their impacts for these stakeholders, while simultaneously expanding their models in existing markets, entering new markets, serving new populations, expanding full-risk models, and leveraging their purpose-built technologies for increased growth and scale.

Strategic and financial benefits of the transaction include:

- Creates a premier national member-based, technology-powered primary care platform to deliver better health, better care, and lower costs across Commercial and Medicare populations;

- Positions One Medical with Iora Health to advance the health of members across every stage of life;

- Extends One Medical's platform to deliver multi-modal care with 24/7 national digital health and in-person care across a combined 28 markets and beyond;

- Expands potential market opportunity to $870 billion across Commercial and Medicare segments, including the new Medicare Direct Contracting program;

- Enhances One Medical's risk-taking capabilities and extends One Medical into full-risk Medicare reimbursement models;

- Amplifies the power of purpose-built technologies to deliver premier member experiences, population health, provider support, and value-based care across every stage of life;

- Accelerates the expansion of two high-growth organizations, with complementary cultures and models serving as a premier place to practice modernized healthcare; and,

- Offers an opportunity to create significant value, with an expected $350+ million in annual revenue synergies by 2025, ~$30 million in annual net cost synergies by 2025, and with ~$30 million in cumulative capex savings through 2025.

"One Medical has proven its ability to drive profitable membership growth, engage with members, improve health outcomes and lower costs. I am excited at the prospect of creating even more differentiation by adding Iora Health's Medicare-focused capabilities, expanding our reach to 28 markets, and offering our service experience to the parents and grandparents of our 598

thousand members," said **Bjorn Thaler**, Chief Financial Officer, One Medical.

**Leadership and Governance**

A designee of Iora Health will join the One Medical Board and Rushika Fernandopulle will become One Medical's Chief Innovation Officer.

**Transaction Details**

Under the terms of the agreement, Iora Health shareholders will receive 56.1 million shares of One Medical common stock. Based on the closing share price of One Medical's common stock of $35.59 on June 4th, 2021, the total transaction is valued at approximately $2.1 billion. Upon completion of the transaction, Iora Health shareholders are expected to own approximately 26.75% of the combined company.

The transaction is expected to close in late Q3 or Q4 of 2021 and is subject to customary closing conditions, including approval by One Medical and Iora Health stockholders and receipt of regulatory approval.

**Advisors**

Morgan Stanley & Co. LLC served as exclusive financial advisor to One Medical and Cooley LLP served as legal advisor.

Credit Suisse served as exclusive financial advisor to Iora Health and Skadden, Arps, Slate, Meagher & Flom LLP served as legal advisor.

* * *

25.     The Board has unanimously agreed to the Proposed Transaction.  It is therefore imperative that 1Life's stockholders are provided with the material information that has been omitted from the Proxy Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests prior to the forthcoming stockholder vote.

**B.**     **The Materially Incomplete and Misleading Proxy Statement**

26.     On August 10, 2022, 1Life filed the Proxy Statement with the SEC in connection with the Proposed Transaction.   The Proxy Statement was furnished to the Company's stockholders and solicits the stockholders to vote in favor of the Proposed Transaction.   The Individual Defendants were obligated to carefully review the Proxy Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions.   However, the Proxy Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

*Omissions and/or Material Misrepresentations Concerning Financial Projections*

27.     The Proxy Statement fails to provide material information concerning financial projections by 1Life management and relied upon by Morgan Stanley in its analyses. The Proxy Statement discloses management-prepared financial projections for the Company which are materially misleading. The Proxy Statement indicates that in connection with the rendering of its fairness opinion, that the Company prepared certain non-public financial forecasts (the "Company Projections") and provided them to the Board and Morgan Stanley with forming a view about the stand-alone valuation of the Company. Accordingly, the Proxy Statement should have, but fails to provide, certain information in the projections that 1Life management provided to the Board and the Financial Advisors. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

28.     For the Company Projections, the Proxy Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics: Care Maring, Adjusted EBITDA and Unlevered Free Cash Flow, but fails to provide line items used to calculate the metrics and a reconciliation of the non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a).

29.     When a company discloses non-GAAP financial measures in a Proxy Statement that were relied on by a board of directors to recommend that stockholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

30.     The SEC has noted that:

> companies should be aware that this measure does not have a uniform definition and its title does not describe how it is calculated. Accordingly, a clear description of how this measure is calculated, as well as the necessary reconciliation, should accompany the measure where it is used. Companies should also avoid inappropriate or potentially misleading inferences about its usefulness. For example, "free cash flow" should not be used in a manner that inappropriately implies that the measure represents the residual cash flow available for discretionary expenditures, since many companies have mandatory debt service requirements or other non-discretionary expenditures that are not deducted from the measure.[1]

---

[1] U.S. Securities and Exchange Commission, Non-GAAP Financial Measures, last updated April 4, 2018, available at: https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm

31.     Thus, to cure the Proxy Statement and the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information in the Proxy Statement, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures to make the non-GAAP metrics included in the Proxy Statement not misleading.

*Omissions and/or Material Misrepresentations Concerning Financial Analyses*

32.     With respect to Morgan Stanley's *Public Trading Benchmarks Analysis*, the Proxy Statement fails to disclose the financial metrics for each company selected for the analysis.

33.     With respect to Morgan Stanley's *Discounted Equity Value Analysis*, the Proxy Statement fails to disclose: (i) the inputs and assumptions underlying the range of next twelve month multiples of 1.50x to 2.50x; (ii) the estimated net debt of 1Life at the end of year 2024; (iii) the number of fully diluted common shares as of year-end 2024; and (iv) the inputs and assumptions underlying the discount rate of 14.8%.

34.     With respect to Morgan Stanley's *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) the line items used to calculate the unlevered free cash flows; (ii) the range of terminal values for 1Life; (iii) the inputs and assumptions underlying the perpetual growth rate ranging from 3.0% to 4.0%; (iv) the inputs and assumptions underlying the use of the range of discount rates of 12.9% to 14.0%; (v) the net cash of the Company as of June 30, 2022; (vi) the present value of a future projected common equity issuance; (vii) the number of fully diluted shares of Company stock as of July 19, 2020 [sic].

35.     With respect to Morgan Stanley's *Precedent Transactions – Premiums Paid Analysis*, the Proxy Statement fails to disclose: (i) the transactions selected by Morgan Stanley for the analysis; and (ii) the premiums paid for the target companies in those selected transactions.

36.     With respect to Morgan Stanley's *Broker Price Targets* analysis, the Proxy Statement fails to disclose: (i) the future public market trading price targets for the Company's common stock that were prepared and published by equity research analysts on or before July 1, 2022; (ii) the equity research analysts reviewed and analyzed by Morgan Stanley for the analysis.

37.     In sum, the omission of the above-referenced information renders statements in the Proxy Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the special stockholder meeting to vote on the Proposed Transaction, Plaintiff will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and he is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

**CLAIMS FOR RELIEF**

**<u>COUNT I</u>**

**On Behalf of Plaintiff Against All Defendants for Violations of**
**Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100**

38.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

39.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading."  17 C.F.R. § 240.14a-9.

40.     Defendants have issued the Proxy Statement with the intention of soliciting stockholder support for the Proposed Transaction.   Each of the Defendants reviewed and authorized the dissemination of the Proxy Statement and the use of their name in the Proxy

Statement, which fails to provide critical information regarding, among other things, the financial projections that were prepared by the Company and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

41.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading.  Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).  The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information to stockholders although they could have done so without extraordinary effort.

42.     Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement.  The preparation of a Proxy Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence.  Defendants were negligent in choosing to omit material information from the Proxy Statement or failing to notice the material omissions in the Proxy Statement upon reviewing it, which they were required to do carefully.  Indeed, Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation and review of strategic alternatives.

43.     The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, who will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.  Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

### On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act

44.    Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

45.    The Individual Defendants acted as controlling persons of 1Life within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as directors of 1Life, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of 1Life, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

46.    Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

47.    In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of 1Life, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same.  The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction.  The Proxy Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction.  The Individual Defendants were thus directly involved in the making of the Proxy Statement.

48.     In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement.  The Proxy Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered.   The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

49.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

50.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

51.     Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in his favor and against the Defendants jointly and severally, as follows:

A.     Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Proxy Statement;

B.     Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C.     Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

D.     Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E.     Granting such other and further equitable relief as this Court may deem just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury.

Dated: August 10, 2022                    **MELWANI & CHAN LLP**

By:   */s/ Gloria Kui Melwani*
Gloria Kui Melwani (GM5661)
1180 Avenue of the Americas, 8th Fl.
New York, NY 10036
Telephone: (212) 382-4620
Email: gloria@melwanichan.com

*Attorneys for Plaintiff*